IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                    No. 11 CR 3105 MV

ROCCO ROBERT SCHULTHEIS,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Defendant Rocco Schultheis's Motion to Suppress Evidence [Doc. 20].  Although Defendant does not style his motion as a request for a *Franks*[1] hearing, such a hearing is indeed what he is requesting.  As the Court will explain below, having considered the briefs, relevant law and being otherwise fully informed, finds that Defendant has not met his burden under *Franks v. Delaware*, and he is not entitled to a hearing. Accordingly, the Court concludes that Defendant's Motion is not well-taken, and it will be **DENIED**.

## BACKGROUND

On August 31, 2011, law enforcement officers executed a federal search warrant on Defendant's residence and business and discovered two unlawful firearms, both fully automatic

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

machine guns.  The search warrant was issued pursuant to an affidavit completed by ATF

Special Agent Brandon Garcia.

Agent Garcia's affidavit sets forth the facts leading up to the ATF's investigation of

Defendant.  Two anonymous tipsters initially provided inadequate information to commence an

investigation, but later made their identities known to agents.  After disclosing their identities,

these confidential sources (hereinafter "CS1" and "CS2") agreed to assist the ATF in its

investigation.  CS1 stated that several months prior, he/she had fired an AR-10 semiautomatic

firearm with Defendant, and that recently Defendant had shown CS1 that he had made the

firearm fully automatic.  CS1 also explained that both he/she and Defendant had served in the

military, and Defendant had fired fully automatic firearms in that capacity.  Agent Garcia

opined, based on his training and experience, that the description CS1 gave of how Defendant

converted the gun was a true representation of how one would make a semiautomatic firearm

fully automatic.  CS2 told agents that two to three years prior, Defendant told him/her that he

had fully automatic firearms.    CS2 explained that Defendant had converted a number of

semiautomatic firearms to function as fully automatic firearms.  Based on his training and

experience, Agent Garcia knows that it is relatively easy to find instructions for how to convert

firearms on the internet.

Agent Garcia assessed both CS1 and CS2 to be reliable witnesses.  They came forward as

concerned citizens; neither was being paid and neither has a criminal record.  They both stated

they would be willing to testify in court as to the information they were providing.

Agent Garcia further explained that based on his training and experience, people who violate firearms laws fall into two categories: those who stockpile weapons and those who keep them for a short period of time.  Those in the former category generally always have weapons available to them – in their home, car, or business.  Agent Garcia opined that Defendant was in the "stockpiler" category, leading the agent to conclude that he would in all likelihood still possess  guns he had months and even years ago.  Based on this knowledge, Agent Garcia concluded that Defendant was likely to have unlawful firearms in his home and business, particularly because both confidential sources had witnessed him to have firearms there.  He further believed that the tools Defendant used to convert the firearms to fully automatic machine guns would be located at his home and/or business.  Finally, Agent Garcia consulted the National Firearms Register and found no record of Defendant or his wife owning National Firearms Act firearms.

On December 14, 2011, Defendant was indicted for possession of two machine guns, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).  On April 4, 2012, he filed the instant motion to suppress, in which he argues that the search warrant was improperly issued because Agent Garcia's affidavit failed to establish probable cause.

**APPLICABLE LAW**

Defendant challenges the adequacy of Agent Garcia's affidavit, contending that it did not support probable cause for the magistrate judge to issue a search warrant.  This brings his challenge under *Franks v. Delaware*, 438 U.S. 154 (1978), where the Supreme Court held that a defendant who challenges a search warrant affidavit is entitled to a hearing if he "makes a

substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [] the allegedly false statement [was] necessary to the finding of probable cause." *Id*. at 155-56. The law imposes this burden on criminal defendants because search warrant affidavits are afforded a presumption of validity. *Id*. at 171.

The Tenth Circuit has clarified *Franks* as follows:

> A defendant is entitled to a *Franks* hearing if he makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause. The standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods. Defendants must point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011). In *United States v. Lewis*, 594 F.3d 1270, 1286 (10th Cir. 2010), the Tenth Circuit stated that it would be "improper" to hold an evidentiary hearing regarding the validity of a search warrant absent such a showing.

## DISCUSSION

Defendant does not allege that the affidavit contained reckless or intentional false statements. Instead, he argues that Agent Garcia did not adequately corroborate the information provided by the confidential sources. First, Defendant focuses on the fact that although both sources agreed that Defendant was a dangerous person, they did not adequately explain how they came to that conclusion. Defendant next attacks the confidential sources' reliability, pointing

4

out that Agent Garcia did not explain how he ascertained CS2's identity, nor did the sources provide *recent* information regarding Defendant's possession of firearms.

As his final point in his motion to suppress, Defendant states that "it will become clear at the suppression hearing that [the confidential sources] had other motives for bringing forth the information that formed the basis of the search warrant . . . . [F]amily dynamics existing at the time gave both confidential sources a motive to provide information to law enforcement that could result in the arrest of Mr. Schultheis."  Def. Mot. to Suppress at 6.  Defendant elaborates on this point in his reply, stating that the confidential sources are related to Defendant's wife, and they are engaged in a family dispute over mineral rights that could be worth millions of dollars.  Def. Reply at 2.  Defendant argues, "An evidentiary hearing is necessary in this case for counsel to develop facts pertaining to the two confidential sources that would negate the veracity and reliability of their statements[.]"  *Id*.  He states that, although the ATF agents "may not have been aware of the dynamics involved in this family dispute, they were obligated to investigate the veracity and reliability" of the sources and the information they provided.  *Id*. at 3.

Neither Defendant's assertions regarding the veracity and reliability of the confidential sources, nor his arguments that Agent Garcia failed to adequately corroborate the confidential sources' information, entitle him to a hearing under *Franks*.  A defendant challenging a search warrant must allege that the affiant included false information either intentionally or recklessly, and, he must advance specific reasons supporting this allegation.  *Lewis*, 594 F.3d  at 1286. Defendant has not satisfied this standard.

## I.  Whether or Not Defendant Is a "Dangerous Person"

The Court need not focus heavily on Defendant's argument that neither source provided

sufficient information to support their characterization of Defendant as a "dangerous person."

Even assuming that Defendant is not in fact a dangerous person, and further assuming that Agent

Garcia acted unreasonably in accepting the allegations that Defendant is dangerous without

conducting further research, the test in *Franks* is clear: "the allegedly false statement [must be]

necessary to the finding of probable cause."  438 U.S. at 155-56.  The warrant did not issue

because the sources believed Defendant to be dangerous.  Rather, the warrant issued because it is

a federal crime to possess a machine gun, no matter how docile or dangerous the holder of the

gun is.  Omitting the statements about Defendant's alleged dangerousness from the affidavit

would not vitiate probable cause to issue the warrant, because the warrant issued based on

evidence that Defendant was in possession of illegal firearms.

## II.  Agent Garcia's Failure to Explain how he Ascertained CS2's Identity

Defendant is correct that Agent Garcia's affidavit is silent as to how he learned of CS2's

identity.  However, the magistrate judge who authorized the warrant reviewed Agent Garcia's

sealed addendum to his affidavit, which the Court has now made available to Defendant in a

separate sealed order.  The addendum confirms Defendant's suspicions as to the identity of the

confidential sources and briefly sets forth the sources' version of the family dispute to which

Defendant refers in his reply.  Based on the information in the addendum, confirming that the

confidential sources are siblings, it would be reasonable for the magistrate judge to conclude that

CS1 informed the agents of CS2's identity.  Regardless, Defendant does not explain how Agent

Garcia's failure to explain how he identified CS2 affects the probable cause determination. Defendant has provided no basis for the Court to conclude that the agent's omission vitiates probable case.

### III.    CS1's Relocation out of State

Defendant next argues that a more thorough investigation of the confidential sources would have revealed that "CS1 could not have discharged a semi-automatic rifle with Mr. Schultheis within the last 3 years as he had moved out of state in 2002 or 2003." Def. Reply at 3.  Defendant does not expressly identify this as a false statement.  Nonetheless, he appears to assume that CS1's relocation to another state automatically means he/she was lying when he/she said that in the last two to three years, he/she fired a gun with Defendant and Defendant showed him/her how the gun could be converted to fully automatic mode.  Therefore, Agent Garcia's inclusion of CS1's account of when Defendant showed him/her the converting mechanism on the gun, without investigating whether or not CS1 was actually in New Mexico two to three years ago, amounts to a reckless disregard for the truth.  However, Defendant advances no case law to support his insinuation that the agent was required to perform this level of a background search on an informant.  Even if Agent Garcia had discovered that CS1 left New Mexico nearly ten years ago, because CS1 is Defendant's wife's sibling, the agent would have no reason to doubt that CS1 visited New Mexico in recent years.

Most relevant to the *Franks* analysis is the fact that Defendant does not expressly allege that this was a false statement which Agent Garcia recklessly or intentionally included in his affidavit.  In *United States v. Lewis*, 594 F.3d 1270 (10th Cir. 2010), the defendant was

convicted in a major ponzi scheme whereby he defrauded investors of millions of dollars. The defendant argued that he was entitled to a *Franks* hearing because the affiant in his case "failed to disclose that she had little direct basis for the claim in the affidavit that the internal workings of the office was understood by a confidential informant." *Id*. at 1286. The Tenth Circuit affirmed the district court's denial of a *Franks* hearing on grounds that "Lewis has never asserted, before this court or in the district court, that the affiant intentionally or recklessly made false statements. Thus, a *Franks* hearing would have been improper." *Id*.

Here, Defendant is arguing – at best – that the affiant was negligent in not further researching CS1's claim that he/she had fired guns with Defendant in the last two to three years; had Agent Garcia researched CS1's residence history, the agent would have learned that CS1 left New Mexico roughly ten years ago. If the affiant in *Lewis* – who purportedly implied that a confidential source had greater knowledge than he/she did about the crime – did not meet the standard set forth in *Franks*, nor can Agent Garcia's incomplete information be framed as reckless. Agent Garcia knew that Defendant's wife was CS1's sister, so had no reason to disbelieve that CS1 had been in New Mexico to visit the Schultheis family in the last two to three years. Under the holding in *Lewis*, it would be "improper" to hold a hearing on Defendant's motion, because his allegations do not amount to a charge of reckless disregard for the truth. *See* 594 F.3d at 1286. Moreover, Defendant has not presented sufficient evidence in support of his allegations as required under *Cooper*. *See* 654 F.3d at 1128 (defendant must make "a *substantial showing* that the affidavit contains intentional or reckless false statements"

(emphasis added)).  Not only has Defendant failed to adequately *allege* Agent Garcia was

reckless, but he certainly has not made a substantial showing of reckless disregard for the truth.

**IV.     The Confidential Sources' Alleged Ulterior Motive**

Finally, Defendant makes much of the confidential sources' improper motives for

contacting the ATF.  Defendant has advanced no authority to support his assertion that a

confidential source's ill will towards the subject of the investigation renders the information

inherently unreliable.  To the contrary, in *Illinois v. Gates*, 462 U.S. 213, 234 (1983), where the

Supreme Court set forth a "totality of the circumstances" test for evaluating whether a

confidential informant's tip establishes probable cause, the Court noted: "[E]ven if we entertain

some doubt as to an informant's motives, his explicit and detailed description of alleged

wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to

greater weight than might otherwise be the case."  The confidential sources in this case had

personal knowledge of Defendant's illegal activity, and their motive for disclosing this

information to law enforcement is not dispositive as to the determination of probable cause.  In

his addendum, Agent Garcia acknowledged the bias that both sources have against Defendant,

and the magistrate judge properly concluded that this bias did not render the information

provided unreliable.  To be sure, it is unlikely that a source with nothing but positive feelings

about someone would nonetheless contact law enforcement about the person's criminal activity.

*See United States v. Strifler*, 851 F.2d 1197, 1201 (9th Cir. 1988) (upholding denial of *Franks*

hearing after acknowledging that confidential informants had ulterior motive for bringing

information to police, noting: "It would have to be a very naive magistrate who would suppose

that a confidential informant would drop in off the street with such detailed evidence and not have an ulterior motive.  The magistrate would naturally have assumed that the informant was not a disinterested citizen.").

Because Agent Garcia disclosed the family dispute in his addendum, yet listed no third party from whom he obtained additional information about the family dynamics, it would follow that both sources were honest with the agent about the dispute.  Agent Garcia arguably could have conducted a more thorough investigation – ascertaining the identity and contact information of other family members to investigate whether the confidential sources would concoct a story about Defendant to retaliate against him following the family dispute.  However, such action was certainly not required.  The agent's decision not to further investigate the sources was reasonable, and it does not amount to a reckless disregard for the truth.

### CONCLUSION

Defendant has not satisfied his burden under *Franks* to make a substantial showing that Agent Garcia knowingly and intentionally, or with reckless disregard for the truth, included in his affidavit a false statement that was essential to the magistrate judge's finding of probable cause.  Accordingly, Defendant is not entitled to a *Franks* hearing.  **IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence [Doc. 20] is **DENIED**.

Dated this 20th day of July, 2012.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

*Attorneys for Plaintiff:*
Louis Valencia
Raul Torrez

*Attorney for Defendant:*
Alonzo Padilla